**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIM. NO. GLR-23-267** |
| **MICHAEL COMBS,** | |
| **Defendant.** | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS ALL TANGIBLE AND DERIVATIVE EVIDENCE, AND TO DISMISS COUNT ONE OF THE INDICTMENT UNDER THE SECOND AMENDMENT

### INTRODUCTION

On March 30, 2023, the Defendant, Michael Combs, possessed a loaded pistol along with fentanyl and cocaine that was packaged for distribution. Baltimore City police officers arrested Combs after recovering these items from his pants and pockets during a safety pat-down. Later, Combs was federally indicted.

Combs now moves to suppress the physical evidence seized from him on March 30, 2023 and any derivative evidence recovered during its execution, to include statements, as "fruit of the poisonous tree". ECF No. 40. He also moves to dismiss Count One of the Indictment under the Second Amendment. ECF No. 41. As detailed below, the motions should be denied as meritless.

### STATEMENT OF FACTS

On March 27, 2023, members of the Baltimore Police Department (BPD) obtained a search warrant to search the residence of 2110 North Charles Street, Apt. 1, Baltimore, Maryland. ECF No. 40-1. The target of the search warrant, Kenneth Price, was suspected of engaging in drug trafficking and resided at the target residence. On the morning of March 30, 2023, BPD executed the search warrant.

1

Officers observed the Defendant and a female sitting on the couch in the front room upon entering the apartment. Price, the target of the warrant, was in the backroom. All three residents were detained and read their *Miranda* rights. Sergeant Gabriel Barnett conducted a protective pat down[1] of Combs and felt an object in Combs' right side jacket pocket that he knew based on training and experience to be consistent with the shape and size of gel caps containing controlled dangerous substances (CDS). Sergeant Barnett then searched Combs' right side jacket pocket and retrieved the item, which was a clear plastic baggie containing 92 green and clear gel caps of fentanyl[2]. Sergeant Barnett then continued searching Combs and recovered a single black top vial of cocaine from Combs' right smaller pants pocket and eight additional black top vials of cocaine from Combs' left jacket pocket[3]. A still image from Sergeant Barnett's bodyworn camera footage below depicts his recovery of the 92 green and clear gel caps of fentanyl[4].



*Approximately 2:16 in the video.*

---

[1] Throughout this submission, the terms "pat down" and "frisk" are used interchangeably.
[2] This was confirmed by the Baltimore Police Laboratory as fentanyl.
[3] This was confirmed by the Baltimore Police Laboratory as cocaine.
[4] This is being submitted as Exhibit 1.

Sergeant Barnett continued his pat down and felt through the exterior of Combs' pants an object in between Combs' legs in his groin area that Sergeant Barnett knew based on training and experience was consistent with the shape of a handgun. At this point, Sergeant Barnett exclaimed, "He got a gun on him!" Detective James Craig, who had been standing nearby, reached into Combs' groin area and recovered a black Taurus G3 semi-automatic handgun bearing serial number ADB508964 from inside Combs' pants, tucked between his legs. A still image from Detective Craig's bodyworn camera footage is captured below[5].



*At approximately 4:18 in the video.*

---

[5] This is being submitted as Exhibit 2.

The handgun contained 15 rounds of 9mm ammunition. No additional evidence was recovered from the apartment or from any other person. Combs was placed under arrest and transported to BPD's Northern District for processing.

During the encounter with Mr. Combs, he made several brief statements, including "I'm not doing nothing" (*Exhibit 1* at 3:08) and "My bad, I don't want you all to beat me up. I'm just sick and tired man. I was just here chillin' man. I'm not moving." (*Exhibit 1* at 3:40)[6].

On August 2, 2023, a grand jury sitting in the District of Maryland returned a three-count indictment charging the Defendant with (1) possession of a firearm and ammunition by a prohibited person (in violation of 18 U.S.C. § 922(g)(1)); (2) possession with intent to distribute a controlled substance (in violation of 21 U.S.C. § 841(a)); and (3) possession of a firearm in furtherance of drug trafficking (in violation of 18 U.S.C. § 924(c)). *See* ECF No. 1 (Crim. No. GLR-23-267).

Defendant Combs now seeks to suppress the firearm and CDS recovered from his person, as well as any derivative evidence, including statements, arguing that the search constituted an impermissible *Terry* frisk. This argument is without merit, as the BPD officers acted in accordance with well-established precedent that allows them to conduct a pat down for officer safety during the execution of a residential search warrant for CDS. Additionally, Combs moves this Court to dismiss Count One of the indictment as violative of the Second Amendment, but this argument contravenes established Supreme Court precedent, as Combs concedes, and therefore must be denied as well.

---

[6] Although the Government may ultimately decide to not use these statements at trial, they do not constitute "fruit of the poisonous tree" and therefore should not be suppressed.

**ARGUMENT**

I.     **THE EVIDENCE WAS SEIZED PROPERLY AS IT WAS IMMEDIATELY RECOGNIZED AS CONTRABAND FOLLOWING A LAWFUL *TERRY* PAT DOWN**

   **A.  LEGAL FRAMEWORK**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, this requires a warrant before law enforcement conducts a search. *New York v. Belton*, 453 U.S. 454, 457 (1981) (citation omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014) (citation omitted).

Three exceptions are relevant here. *First*, law enforcement executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). This includes "the authority to use reasonable force to execute the detention." *Muehler v. Mena*, 544 U.S. 93, 97–101 (2005) (placing occupants in handcuffs and detaining them in converted garage for two or three hours while search was conducted for weapons and evidence of gang membership was reasonable and therefore did not violate the Fourth Amendment). *Second*, law enforcement may—without a warrant—conduct a pat down for a weapon for officer safety when there is a reasonable, articulable suspicion that a person is armed. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *Third*, officers who are able to immediately recognize the incriminating nature of contraband based on "plain touch" provides probable cause to search and seize the contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

The defendant bears the burden of proof when alleging a Fourth Amendment violation. *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024) (citation omitted). At the same time,

the Government need only show, "by a preponderance of the evidence, that an exception to the warrant requirement applies." *United States v. Aigbekaen*, 943 F.3d 713, 719 (4th Cir. 2019) (citation omitted).

### B.  THE DEFENDANT WAS PROPERLY DETAINED PENDING THE ORDERLY EXECUTION OF THE SEARCH WARRANT

As the Defendant concedes[7], officers were authorized in detaining (i.e., handcuffing) Combs while a proper search was conducted of the residence. *Summers*, 452 U.S. 692 at 705. Additionally, the use of handcuffs to detain Combs was permissible, especially in light of the fact that the search warrant was related to drug distribution. *Muehler v. Mena*, 544 U.S. 93, 97–101 (2005) citing *Summers,* 452 U.S. 692 at 702-03 (the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence").

### C.  A TERRY FRISK WAS PERMISSIBLE UNDER THE CIRCUMSTANCES

Once the Defendant was temporarily detained in the residence, the officers were well within their right to conduct a protective pat down, or frisk, of the Defendant under *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

A *Terry* seizure is permissible when law enforcement has a reasonable suspicion that crime may be afoot and that the person with whom he is dealing may be armed and dangerous. *Id.* The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. Where an officer believes that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous, "he is entitled for the protection

---

[7] ECF No. 40, p. 5 ("…officers have limited authority to detain the occupants of a premises during an authorized search" citing *Summers* and *Yanez-Marquez v. Lynch, 789 F.3d 434 (4th Cir. 2015)*).

of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.* at 30.

Reasonable suspicion is a less demanding standard than probable cause, and even "requires a showing considerably less than preponderance of the evidence." *Wardlow*, 528 U.S. at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Rather, the officer must be able "to articulate more than 'inchoate and unparticularized suspicion of hunch' of criminal activity." *Id.* (quoting *Terry,* 392 U.S. at 27). *See also Terry,* 392 U.S. at 21 (explaining that to stop and briefly detain and individual for investigative purposes, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). The investigatory stop may involve a brief, complete restriction of liberty. *United States v. Elston,* 479 F.3d 314, 319 (4th Cir. 2007) (internal quotations omitted). If law enforcement believes an individual may be armed, they may conduct a pat down (i.e., "frisk") for weapons without a warrant. *Terry*, 392 U.S. at 30.

A frisk under *Terry* is rooted in officer safety. It is a temporary detention so that law enforcement can investigate further while not endangering themselves. That principle is even more pronounced during the execution of a drug-related search warrant in a close-quarters apartment, such as the facts present here.

The Government anticipates that Sergeant Barnett would testify that as a long-time member of the BPD, he is familiar with the area surrounding 2110 North Charles Street and knows it to be a high-drug, high-violence area. The Government also anticipates that Sergeant Barnett would explain that based on his training and experience, he knows that drug distribution and firearm possession oftentimes go hand-in-hand. With this frame of reference, Sergeant Barnett was

executing a search warrant in a close-quarters apartment where he believed there would be evidence of drug distribution and that the target of the search warrant was a drug dealer.

Upon encountering Combs, Sergeant Barnett placed him temporarily in handcuffs and properly patted down the exterior of Combs' clothes. As explained above, his actions were rooted in officer safety and based on the logical, reasonable suspicion that the defendant may possess a weapon. This was particularly important in a situation with multiple civilians and police officers in a small apartment. That suspicion proved founded as Combs did indeed possess such a weapon.

The Defendant relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979) in his assertion that the search of a particular place is not, on its own, sufficient to justify a *Terry* frisk of person located at the premises where the warrant is executed. But one needs to dig a bit deeper to see how different *Ybarra* is from the case at hand. In that case, law enforcement was executing a search warrant for CDS at a public bar, not a close-quarters residential apartment. *Ybarra*, 444 U.S. 85 at 88. Additionally, law enforcement patted down "each of the 9 to 13 customers present in the tavern". *Id*. This second factor is significant for two critical reasons – first because of the sheer number of individuals frisked (9 to 13) but also because they were merely *customers* of the bar. A public venue like a bar has customers coming in and out all the time. Surely, not every one of those customers is engaged in drug trafficking activity. Much to the contrary, the instant case involves an apartment in which three individuals were present, one of whom was the target of the search warrant and a known drug dealer. The circle of individuals present in one's apartment is assuredly smaller than the circle of customers present at a public bar. Thus, there is a heightened sense of "reasonable suspicion" that the individuals found in the apartment here were involved in criminal activity or possessed a weapon. Given the nature of the premises to be searched and the criminal

activity involved, a *Terry* frisk was much more appropriate for Combs than in *Ybarra*. Therefore, the Defendant's comparison of the two lacks merit.

### D. WHILE CONDUCTING THE LAWFUL TERRY FRISK, SERGEANT BARNETT FELT CDS IN "PLAIN TOUCH" BEFORE REACHING INTO COMBS' POCKET

When officers conducting a *Terry* frisk feel what they believe to be contraband (e.g., CDS), they are permitted to seize the contraband under a "plain-touch" exception to the search warrant requirement. *Minnesota v. Dickerson,* 508 U.S. 366, 375 (1993).

The "plain touch" doctrine is akin to the "plain view" exception to the warrant requirement that was first recognized in *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion). There are three essential elements:

1. The police must show that they "did not violate the Fourth Amendment in arriving at the [p]lace from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 139-40 (1990); *Thompson v. Louisiana*, 469 U.S. 17, 22 (1984).

2. The seizing officer must have a lawful right of access to the evidence. *See Horton*, 496 U.S. at 136-37.

3. The incriminating nature of the evidence seized must be immediately apparent. *Id.* "Immediately apparent" means that police have probable cause to believe an object in plain view is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

The same rationale and elements come into play in the related "plain touch," "plain smell," and "plain hearing" doctrines. *Minnesota v. Dickerson*, *id.* (seizure invalid where the incriminating nature of the object became apparent only after extended manipulation); *United States v. Yamba*, 506 F.3d 251 (3d Cir. 2007) (probable cause from feeling spongy marijuana bag; provides survey of post-*Dickerson* cases); *United States v. Craddock*, 841 F.3d 756 (8th Cir. 2016)

(reasonable suspicion frisk, but not probable cause); *Illinois v. Caballes*, 543 U.S. 405 (2005) (dog sniff permissible during traffic stop); *United States v. Carey*, 836 F.3d 1092 (9th Cir. 2016) (agents overhear speakers unrelated to the target conspiracy while listening to a valid wiretap).

The *Dickerson* Court emphasized the importance of whether the object's "incriminating character is immediately apparent." *Dickerson,* 508 U.S. at 375. The Court continued: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375-76.

Here, Sergeant Barnett conducted a proper frisk of Combs' outer clothing pursuant to *Terry*. Only upon feeling the contours of what he immediately knew to be CDS did Sergeant Barnett reach into Combs' jacket pocket and retrieve the gel caps containing fentanyl. Indeed, immediately upon feeling the gel caps through Combs' jacket, Sergeant Barnett claimed, "Whoa a whole pack." *See* Exhibit 1 at minute 2:09. At that point, Sergeant Barnett reached into Combs' jacket pocket and seized the CDS.

Once Sergeant Barnett seized the CDS, which was packaged for distribution, he had probable cause to arrest Combs. "Search incident to arrest" is a well-rooted exception to the search warrant requirement. Police can conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapons or evidence. See New York v. Belton, 453 U.S. 454, 461 (1981); Michigan v. DeFillippo, 443 U.S. 31, 35 (1979); United States v. Robinson,

414 U.S. 218, 235 (1973); *Virginia v. Moore*, 553 U.S. 164 (2008) (search lawful even if statute did not authorize arrest for the offense).

While Sergeant Barnett would have been justified at this point to simply search Combs as a standard search incident to arrest, he continued with his frisk of Combs' outer clothing and recovered additional CDS under the same approach as the initial gel caps. He continued until he felt what he knew to be a firearm (he exclaimed, "Gun!"). *See* Exhibit 1 at minute 3:02. At this point, Detective Craig recovered the firearm, and Combs was arrested.

In sum, the Defendant has characterized the recovery of CDS and the firearm as a fishing expedition in which the officers blindly, and unlawfully, seized the evidence from his person. However, when the Court considers each step in the investigative process undertaken here, it is clear that Sergeant Barnett and Detective Craig acted properly in their temporary detention of Combs during the execution of a search warrant, their frisk for officer safety under *Terry*, and their recovery of the gel caps under the "plain touch" doctrine. Once this transpired, Sergeant Barnett recovered the remaining items (i.e., additional CDS and firearm) both as a search incident to arrest and under the same sequential approach as the initial recovery.

## II.     THE DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT UNDER THE SECOND AMENDMENT SHOULD BE DENIED AS MOOT

The Defendant also argues that 18 U.S.C. § 922(g)(1) is violative of the Second Amendment as applied to him, despite the binding precedent of *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024) to the contrary. The Defendant does not make a facial challenge to the statute, accepting the *United States v. Canada* holding that § 922(g)(1) is constitutional on its face. 123 F.4th 159, 161 (4th Cir. 2024). The *Canada* Court, however, left the door open for as applied challenges. *Id*. That door was closed by *Hunt*. "Having concluded 'there is no need for felony-by-

felony litigation regarding the constitutionality of Section 922(g)(1), we reject appellant Matthew Hunt's as-applied challenge without regard to the specific conviction that established his inability to lawfully possess firearms." *Id.* (internal citation omitted). The Defendant acknowledges that this Court is therefore required to hold § 922(g)(1) constitutional as applied to him unless and until the Fourth Circuit or Supreme Court find otherwise[8]. The Government agrees and the Court must oblige by denying his motion to dismiss Count One of the Indictment.

## CONCLUSION

The Defendant is asking this Court to carry out a sea change – to hold that law enforcement officers who are executing a drug distribution related search warrant of a small apartment in a high-crime area may not conduct a brief protective frisk of the inhabitants under *Terry*. Such a holding is contrary to precedent and inapposite with public policy. Here, officers properly detained Combs while executing their search warrant and conducted a proper frisk of his outer clothing to ensure officer safety. Sergeant Barnett immediately felt what he knew to be CDS in Combs' jacket and only then reached into the jacket, recovering the CDS. A further search yielded additional CDS and a loaded pistol. Therefore, the Court should deny the Defendant's motion to suppress the physical evidence, as well as any statements as "fruit of the poisonous tree."

---

[8] *See* ECF No. 41, p.1.

Moreover, the Court is bound by Fourth Circuit precedent as to the Defendant's challenge to the constitutionality of Count One. Accordingly, the Court must deny the Defendant's motion to suppress and motion to dismiss at ECF Nos. 40-41.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:    ___/S/_____
James O'Donohue
Assistant United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed electronically on May 15, 2025, via CM/ECF and in the process a copy of the same was served via CM/ECF on counsel of record.

\_\_\_\_\_/s/_____
James O'Donohue
Assistant United States Attorney