IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GLR-23-0267 |
| | * | |
| MICHAEL COMBS, | * | |
| | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### REPLY TO THE GOVERNMENT'S OPPOSITION

Michael Combs, through undersigned counsel, respectfully submits this reply to the government's response in opposition (ECF No. 42) to his Motion to Suppress Tangible and Derivative Evidence (ECF No. 40). For the reasons explained herein and in Mr. Combs' opening motion, the Court should suppress all tangible and derivative evidence obtained following law enforcement's illegal search of Mr. Combs' person on March 30, 2023, as fruit of the poisonous tree.

**I.   The government has failed to meet its burden to demonstrate that a *Terry* frisk was warranted.**

The government has not—and cannot—meet its burden to prove that the warrantless search of Mr. Combs' person was lawful. A *Terry* frisk is only authorized where police are "able to point to specific and articulable facts, which, taken together with rational inferences from those facts," supply reasonable suspicion to believe the person is engaged in criminal activity *and* may be armed and presently dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The government fails to identify a single articulable fact that specifically addresses any danger posed by Mr. Combs. Instead, it asks the Court to focus on generalized hunches based on the Charles Street apartment's location in a "high-drug, high-violence area," and an officer's experience that "drug distribution and firearm possession oftentimes go hand-in-hand." ECF No. 42 at 7. These are non-specific factors that fail to supply reasonable suspicion that Mr. Combs, in particular, was armed and presently dangerous. *See United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000) ("[The defendant's] presence in a high crime area is not alone sufficient to justify a *Terry* stop"); *United States v. Perrin*, 45 F.3d 869, 873 (4th Cir. 1995) ("Were we to treat the dangerousness of the neighborhood as an independent corroborating factor, we would be, in effect, holding a suspect accountable for factors wholly outside of his control."); *but see United States v. Chase*, RDB-23-296, 2025 WL 934511, at *7 (D. Md. 2025) (concluding that reasonable suspicion existed to search a person who was in "an area known for drug crimes" and was *also* seen in close proximity to suspected hand-to-hand transactions, observed handling a pill bottle, holding cash, receiving cash from someone, and performing suspected "security checks" consistent with being armed).

In that same vein, the government asks the Court to generally consider the "nature of the premises to be searched." ECF No. 42 at 8. It argues that there are heightened concerns for an officer's safety "during the execution of a drug-related search warrant in a close-quarters apartment," versus the search of patrons in public bar, like in *Ybarra v. Illinois*, 444 U.S. 85 (1979). ECF No. 42 at 7-9. First, like the

2

aforementioned factors, this a non-specific, generalized consideration that fails to address whether Mr. Combs, in particular, was armed and presently dangerous.

Second, the government's attempt to distinguish *Ybarra* from the facts presented is inapposite. The touchstone of the Fourth Amendment is not the *place* to be searched, but the *persons* to be searched. *Katz v. United States*, 389 U.S. 947, 351 (1967) ("But this effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places."); *Ybarra*, 444 U.S. at 92 ("The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places").

Accordingly, this Court's inquiry should not focus on the type of premises that was searched, but Mr. Combs' relationship to the premises. That was the basis of the *Ybarra* Court's reasoning:

> Each patron who walked into the Aurora Tap Tavern on March 1, 1976, was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by "Greg." Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search "Greg," it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers.

*Id.* at 91-92. The *Ybarra* Court made clear that Fourth Amendment protections did not attach to the search of each patron because of the: number of patrons in the premises searched, public location the patrons were searched, or transient nature of their presence in the bar as patrons. Rather, each patron was cloaked by an

3

individualized Fourth Amendment protection because there was simply no probable cause to believe that any of the persons found on the premises, other than the target of the warrant, had violated the law. *Id.* at 90; *see also Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001) (finding that the plaintiff's Fourth Amendment rights were violated when she was frisked in her home, which police had a warrant to search, because "[i]n order to pat her down, the agents needed a reasonable suspicion that she was armed and dangerous, and under *Ybarra* her presence on the premises was not alone sufficient to justify the pat down"). In *Leveto*, the Third Circuit, while recognizing the security risks inherent to the execution of search warrants, declined to "endorse a blanket rule that law enforcement officers may always pat down any resident who is present in premises being searched and who may be a subject of the investigation, no matter what the nature of the suspected offense." 258 F.3d at 165 (internal citation and quotation removed); *cf. United States v. Sporleder*, 635 F.2d 809 (10th Cir. 1980) (invalidating an officer's frisk of an individual who was present at the site of a suspected meth lab, where officers were executing a search warrant, because *Terry* does not permit a generalized "cursory search for weapons" and that "[e]xcept as it may relate to an officer's reasonable belief that a person is armed and presently dangerous, it is of no consequence that the person is an object of the government's suspicion that led to the search of the premises."); *United States v. Harvey*, 897 F.2d 1300, 1304 n. 2 (5th Cir. 1990) ("The mere presence of an individual on such premises with nothing more does not suffice to justify a stop and frisk search under *Terry*.")

Just as the warrant in *Ybarra* failed to establish the bar patrons' connection to the warrant's target, the warrant here does not establish Mr. Combs's connection to Kenneth Price. Neither Mr. Combs' name nor his description is featured in the search warrant affidavit, which does not indicate that anyone besides Mr. Price was suspected of being connected to drug-related activities from the Charles Street apartment. *See* Defense Exhibit 1. Moreover, upon law enforcement's entry to the apartment, Mr. Combs was found inches from the front door, sleeping on a couch in the living room. Police had no reason to believe that he was specifically committing or was about to commit an offense. He made no gestures indicative of criminal conduct, no movements to attempt to conceal contraband, and said nothing suspicious; rather, while still half-asleep, Mr. Combs raised his hands in the air and complied with the officers' demands to stand up and put his hands behind his back. *See id.* at 91. Like Ybarra, the police knew nothing about Mr. Combs beyond his presence in an apartment that was suspected of being used by another person to engage in criminal activity. Mr. Combs was entitled to Fourth Amendment protections, and there was no automatic right to search him based on his mere presence in the apartment. *See United States v. Rancher*, 1991 WL 141037, at *2 (4th Cir. 1991) (unpublished) (noting the "criticism directed at police policies to search all persons present during the execution of narcotics search warrants," and writing that, "the officers were required to have a reasonable suspicion that Rancher in particular posed a threat to them.").

In *Ybarra*, while considering the same circumstances presented in this case, the Court held that a *Terry* frisk was not supported by reasonable suspicion. The Court was "unable to take even the first step required" under the *Terry* analysis because the initial frisk "was simply not supported by a reasonable belief that [the defendant] was armed and presently dangerous." *Id.* at 92-93. This Court must take the same approach.

The government has failed to establish the predicates required to lawfully frisk Mr. Combs after he was detained. Therefore, no warrant exception, including the plain touch and search incident to arrest doctrines, applies. *See Horton v. California*, 496 U.S. 128, 139-40 (1990) (explaining that the plain touch exception applies where, among other factors, the police show they "did not violate the Fourth Amendment in arriving at the [p]lace from which the evidence could be plainly viewed.")

## II. The government has failed to establish that a warrant exception applies.

The government argues that the police were justified in frisking Mr. Combs and the items found on his person were lawfully seized pursuant to the plain touch exception. The government is wrong. Should this Court determine that Mr. Combs was lawfully frisked, then law enforcement's search exceeded the scope of a *Terry* frisk and the plain touch doctrine does not apply.

As the government recognizes, the purpose of a *Terry* frisk is to protect an officer's safety. *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence") (citation removed). To that end, "a

protective search . . . on the basis of reasonable suspicion . . . must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Id.* (quoting *Terry*, 392 U.S. at 26). The search for weapons approved in *Terry* consisted solely of a limited patting of the suspect's outer clothing for concealed objects which might be used as instruments of assault. *Sibron v. New York*, 392 U.S. 40, 65 (1968). If the search "goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.* at 65–66.

While true that, during a lawful frisk, an officer who "feels an object whose contour or mass makes its identity immediately apparent" as contraband may seize it, *Dickerson*, 508 U.S. at 375–76 ("plain feel" doctrine), if the officer "feels, squeezes, or manipulates the suspect's [clothing] in order to determine its content, at a time when there is no threat of harm from the suspect, then the search has exceeded the bounds of a *Terry* pat down and is impermissible." *Jones*, 2023 WL 4627284, at *18.

That is exactly what happened here. Sergeant Barnett did not limit his pat down to Mr. Combs' "outer clothing . . . for concealed objects which might be used as instruments of assault." *Sibron*, 392 U.S. at 65. Rather, body worn camera footage depicts Sergeant Barnett grabbing and lifting the waistband of Mr. Combs' sweatshirt, exposing Mr. Combs' stomach and waistline while shining a flashlight upon him. Sergeant Barnett then clenched Mr. Combs' left pants pocket before moving onto his right sweatshirt pocket. Only after gripping the sweatshirt pocket did Sergeant Barnett announce, "Whoa, a whole pack." He then shined his flashlight

7

into Mr. Combs' sweatshirt pocket, reached into it, and pulled out a clear plastic bag of suspected drugs. Sergeant Barnett next dug into Mr. Combs' left sweatshirt pocket, where he recovered more suspected drugs. Finally, he felt along Mr. Combs' groin area and recovered a handgun. The search was a fishing expedition that "amounted to the sort of evidentiary search that *Terry* expressly refused to authorize" and that has been condemned in the cases that have followed. *Dickerson*, 508 U.S. at 378 (citing *Michigan v. Long,* 463 U.S. 1032, 1049 n. 14 (1983)); *Sibron,* 392 U.S. at 65–66). With such manipulation, the government has failed to meet its burden to establish the application of the plain touch exception.

In conclusion, the officers did not have reasonable suspicion to conduct a *Terry* frisk on Mr. Combs' person, and no warrant exception applies. Even if they did, their search of Mr. Combs far exceeded the scope of a lawful *Terry* frisk. Because the officers lacked individualized suspicion that Mr. Combs was involved in criminal activity and was armed and presently dangerous, all tangible and derivative evidence obtained as a result of the illegal search must be suppressed as fruit of the poisonous tree.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

        /s/
Summer Akhtar
Courtney Francik
Assistant Federal Public Defenders
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
(410) 962-3692
summer_akhtar@fd.org
courtney_francik@fd.org